## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FT. MYERS DIVISION

UNITED STATES OF AMERICA,

v.                                            CASE NO. 2:10-CR-71-FtM-36DNF

HONORI ALEXANDER JOHNSON.

_____/

## FINDINGS. CONCLUSIONS AND JUDGMENT

### I.      BACKGROUND

Defendant Honori Alexander Johnson is charged by Indictment with one count of knowingly

possessing one or more visual depictions, which were produced using materials that had been

mailed, shipped or transported in interstate and foreign commerce, that involve the use of a minor

engaging in sexually explicit conduct in violation of 18 U.S.C. §§2252(a)(4)(B), (b)(2) from January

26, 2010 through February 25, 2010 (Dkt. 1, p. 1).  Defendant was also charged with  one count of

knowingly employing, using, persuading, inducing, enticing or coercing a minor to engage in

sexually explicit conduct on January 27, 2010 for the purpose of producing a visual depiction of such

conduct while using materials that had been mailed, shipped or transported in interstate or foreign

commerce in violation of 18 U.S.C. §§2251(a), (e).  *Id*. at pp. 1-2.  However, during the trial, the

Government moved to dismiss Count II, the production of child pornography.  The Court granted

the motion.

Pursuant to Federal Rule of Criminal Procedure 23(a), Defendant waived his right to a jury

trial.  As required by the Rule, Defendant filed a written waiver of his right to a jury trial, and the

Government consented on May 9, 2011 (Dkt. 70).  After a hearing, the Court concluded that

Defendant's waiver was freely, knowingly and intelligently made (Dkt. 69).  As such, the Court approved his request for a non-jury trial.

On May 10, 2011, the matter was tried before the Court.  Prior to the trial, the parties filed stipulations with respect to certain facts (Dkt. 71, Ex. 10).  The signed stipulations were admitted at trial as Government Exhibit 10.  Additionally, the Government introduced several exhibits, to which Defendant did not object, for the Court to consider: 1) Exhibit 1 - Defendant's Samsung cellular telephone; 2) Exhibit 2a-2b Composite - a CD containing two video files from the Samsung cellular telephone that depict a minor completely nude; 3) Exhibit 3a-3e Composite - pictures taken of the residence; 4) Exhibit 4 - the white sock with a hole utilized to conceal the cellular telephone; 5) Exhibit 5 - a certified copy of the birth certificate of the minor; 6) Exhibit 6a-6d composite - pictures of the Samsung cellular telephone, made in Korea; 7) Exhibit 7a-7e Composite - pictures of the screen captures taken of the Samsung cellular telephone depicting the phone number of the telephone; 8) Exhibit 8a-8b Composite - pictures taken of the sock that the Samsung cellular telephone had been concealed in at the time of discovery; and 9) Exhibit 9 - the memory card containing the two videos in the format that the cellular telephone used to produce the video recordings; this memory card permits the video recordings to be viewed on the cellular telephone (Dkt. 71).

During the trial, the Government did not call a witness to testify during its case in chief.  Instead, the Court viewed the two video recordings on two screens, a computer screen and Defendant's Samsung cellular telephone screen.  After presenting the videos, the Government rested.  Defendant moved for a judgment of acquittal pursuant to Fed. R. Crim. P. 29(a), and the Court heard oral arguments from the parties before denying the Motion.

Defendant called one expert witness, Mr. Marcus Lawson.  Mr. Lawson is the president of a computer forensic and legal consulting firm.  He has testified on behalf of the prosecution and defense in several criminal cases involving child pornography over approximately eleven (11) years. Based on his review of the two videos and his application of the six *Dost* factors, Mr. Lawson opined that only the fourth factor applied because the minor was nude.  Consequently, Mr. Lawson concluded that the videos did not depict child pornography because they did not involve the lascivious exhibition of the genital area of a minor.

Mr. Lawson utilized three exhibits as demonstrative aids[1] to assist in presenting his testimony.  The Government objected, and the Court overruled the objection.  With the use of the demonstrative aids, Mr. Lawson testified about what he considers and looks for when determining whether a visual depiction is child pornography.  Defense Counsel moved to enter these exhibits into evidence upon the conclusion of the expert's testimony.  The Government objected on the basis of relevance, and the Court sustained the objection.  The Government then proceeded to cross-examine Mr. Lawson, which was followed by Defense Counsel's re-direct.

The Government then called a rebuttal expert, Special Agent John Kuchta. Special Agent Kuchta testified about his experience in investigating child pornography cases on behalf of the Government.  Special Agent Kuchta has over twenty (20) years of experience with the Federal Bureau of Investigations (FBI) and also served as special prosecutor for the United States Attorney where he prosecuted child pornography cases.  He has testified as a witness in several cases as a FBI special agent, and this trial was his first time testifying as an expert witness.  Special Agent Kuchta

---

[1]  The demonstrative aids were: 1) Sally Mann, Immediate Family (Aperture Foundation 1992), Aperture Foundation, 1992; 2) Jock Sturges, The Last Day of Summer (Aperture Foundation 1991); and 3) *The Blue Lagoon* (Columbia Pictures 1980).

determined that the two videos, broken down frame by frame, constituted a collection of child pornography images. When applying the *Dost* factors,[2] Special Agent Kuchta opined that the two videos constituted child pornography because they included the lascivious exhibition of the genital area of a minor. Special Agent Kuchta also opined that the two videos were sexual in nature because they were voyeuristic.

Following Defense Counsel's cross-examination of Special Agent Kuchta, the Government conducted a re-direct examination. Defendant renewed his motion for judgment of acquittal, and the Court again heard oral arguments and denied the Motion. The parties then proceeded with closing arguments.

## II.    <u>STIPULATED FACTS</u>

The parties stipulated to the following, as set forth in Exhibit 10:

A.    Defendant Honori Alexander Johnson acknowledges that: first, he knowingly possessed one or more video recordings on his cellular telephone in Charlotte County, Florida, which depict a nude minor; second, the video recordings were made using Defendant's Samsung cellular telephone, which was transported in interstate and foreign commerce; and third, when Defendant possessed the video recordings, he knew that such video recordings were of a minor who was completely nude (Ex. 10, p. 1).

B.    On four occasions, in Charlotte County, in the Middle District of Florida, Defendant utilized his Samsung cellular telephone, Model SPH-M560, DEC No.: 268435458310483573, HEX No.: A00000179FF775 Green, assembled in Korea to record videos of a 13 year old minor female

---

[2] Special Agent Kuchta testified that he applied the five *Dost* factors, although there are six. The Court is unclear as to which of the *Dost* factors Special Agent Kuchta utilized in forming his opinion that the two videos constituted child pornography.

while she is in a bathroom.  Two such video recordings made of this minor female show her in various states of undress, including being totally nude (Ex. 10, pp. 1-2).

C.    On February 25, 2010, the 13 year old minor discovered that she was being videotaped when she dropped her phone from the bathroom counter onto the floor of the bathroom and bent down to retrieve her phone.  At that time, she noticed Defendant's cellular telephone concealed in a sock with a hole, which allowed the lens to be visible and to view the room.  When the minor realized that she was being recorded, she caused the phone to exit its video mode and thereby stopped it from recording, without saving the video then being made.  The minor looked further at the video recordings contained on Defendant's cellular telephone.  Upon observing another video recording of her taken on a previous day while she was nude in the bathroom, the minor deleted that additional video recording from Defendant's cellular telephone and observed two more videos of herself while nude in the bathroom (Ex. 10, p. 2).

D.    On February 25, 2010, the minor's mother viewed the contents of the video recordings from Defendant's cellular phone and observed Defendant captured in the videos while setting up the cell phone in the bathroom of her residence.  The mother also observed her 13 year old nude daughter in the videos.  *Id.*

E.    On February 25, 2010, the minor and her mother took Defendant's cellular telephone to the Charlotte County's Sheriff Office.  *Id.*

F.    Defendant knew that the minor was 13 years old at the time.  Defendant had known the minor for four or five years.  Further, Defendant was aware that the minor attended middle school at this time (Ex. 10, pp. 2-3).

G.      Defendant used a Samsung cellular telephone, manufactured in Korea and previously transported in interstate and foreign commerce, to video record the minor female (Dkt. 10, p. 3).

F.      Subsequent to the execution of a state search warrant, the Charlotte County Sheriff's Office conducted a forensic analysis on Defendant's cellular telephone.  Two video recordings depicting the nude minor were discovered on the cellular telephone.  *Id*.

G.      Video SSPX0003, recorded on or about January 26, 2010, depicts Defendant wearing shorts and a t-shirt, setting up his cellular telephone to video the entrance of the shower.  Defendant placed the phone near the floor facing upward.  Defendant's face is visible in the video.  Defendant is seen covering his cellular telephone with clothing to conceal it.  Defendant positioned the phone to intentionally capture and video record the area of the master bathroom directly in front of the glass shower as well as the shower area.  Defendant spent approximately ten (10) minutes adjusting and checking the position of the cellular phone.  Defendant then turned off the lights in the bathroom prior to exiting.  The video continued to record in the darkened bathroom and captured the 13 year old minor thereafter entering the bathroom and turning on the lights.  The video depicts the minor as she starts the shower and undresses.  In the video, the minor is depicted completely nude in the center of the screen.  Her breasts, buttocks and pubic area are visible in the center of the video recording.  The minor then enters the shower.  The video also captures the minor completely nude as she steps out of the shower and reaches for her towel.  The minor's breasts and pubic area are visible in the center of the video recording.  The minor turns out the bathroom lights and leaves the bathroom.  The video is darkened for approximately two (2) minutes before Defendant returns to the bathroom to shut off the video recording and retrieve his phone (Ex. 10, pp. 3-4).

H.      Video SSPX0002, recorded on or about January 27, 2010, depicts Defendant wearing jeans and a stripped shirt, again setting up his cellular telephone in the bathroom to video record, as on the previous day.  Defendant's face is visible in the video.  Defendant is seen covering his cellular telephone with clothing to conceal it.  The video again captures the area of the master bathroom directly in front of the glass shower as well as the shower area.  Defendant spends approximately ten (10) minutes adjusting and checking the position of the cellular phone.  Defendant then turned off the lights in the bathroom prior to exiting.  The video continued to record in the darkened bathroom and captured the 13 year old minor entering the bathroom and turning on the lights.  The video depicts the minor as she starts the shower and undresses.  In the video, the minor is seen completely nude in the center of the screen.  Her breasts, buttocks and pubic area are visible in the center of the video recording.  The minor then enters the shower.  The video also captures the minor completely nude as she steps out of the shower briefly to check her cellular phone and again later when she finishes her shower and reaches for her towel.  The minor's breasts and pubic area are visible in the center of the video recording.  The minor turns out the bathroom lights as she leaves the bathroom. The video is darkened for approximately two (2) minutes before Defendant returns to the bathroom to shut off the video recording and retrieve his cellular phone (Ex. 10, p. 4).

I.      Aside from Defendant setting up the cellular telephone to video record, the minor is the only person depicted in each of the resulting video recordings (Ex. 10, p. 5).

J.      Defendant set up his cellular telephone to intentionally video record the minor in the bathroom as she undressed and showered before he left the resident to drive the minor's mother to work.  Defendant anticipated both on January 26 and 27, 2010, that the minor would use that bathroom to shower before she left for school.  *Id*.

III.   **ADDITIONAL FINDINGS OF FACT**

In addition to the above facts to which the parties have stipulated, the Court finds that the evidence establishes or fails to establish the following:

A       In the video recorded on January 26, 2011, the portion of the video depicting the minor entering and exiting the bathroom lasts approximately eight (8) minutes and thirteen (13) seconds.  During the video recording, the minor's pubic area is visible on one occasion, for approximately nine (9) seconds.

B.       In the video recorded on January 27, 2011, the portion of the video depicting the minor entering and exiting the bathroom lasts approximately six (6) minutes and twenty-two (22) seconds.  During the video recording, the minor's pubic area is visible on two occasions.  On the first occasion, the minor's pubic area is visible for approximately four (4) seconds.  On the second occasion, the minor's pubic area is visible for approximately ten (10) seconds.

C.       There is no evidence that Defendant uploaded the video footage of the minor to a computer or that Defendant distributed the video footage.

D.       There is no evidence that Defendant had other images of nude children in his possession.

IV.   **CONCLUSIONS OF LAW**

Defendant is charged with a violation of 18 U.S.C. §§2252(a)(4)(B), which provides:

> Any person who . . . knowingly possesses, or knowingly accesses with intent to view, 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or shipped or transported, by any means including by computer, if (I) the producing of such visual

depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction of such conduct; shall be punished as provided in subsection (b) of this section.[3]

In this case, Defendant is charged with knowingly possessing a video with a visual depiction of a minor engaged in sexually explicit conduct. "Sexually explicit conduct" is defined as "actual or simulated: (I) sexual intercourse . . .; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person."  18 U.S.C. §2256(a)(2)(A); *U.S. v. Williams*, 444 F.3d 1286, 1294 (11th Cir. 2006), *rev'd on other grounds*, 553 U.S. 285, 307, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008); *see U.S. v. Johnson*, No. 10-2350, 2011 WL 1236442, at *2 (8th Cir. Apr. 5, 2011).   The videos at issue here do not depict sexual intercourse, bestiality, masturbation, or sadistic or masochistic abuse. Therefore, the pertinent provision of the definition is the lascivious exhibition of the genitals or pubic area of a minor.  As such, the issue before the Court is whether the videos on Defendant's cellular phone, used to secretly record the minor in the bathroom, depict the lascivious exhibition of the genitals and pubic area of the 13-year-old minor.

------

[3]  Section (b)(2) provides:

> Whoever violates, or attempts or conspires to violate, paragraph (4) of subsection (a) shall be fined under this title or imprisoned not more than 10 years, or both, but if such person has a prior conviction under this chapter, chapter 71, chapter 109A, or chapter 117, or under section 920 of Title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, such person shall be fined under this title and imprisoned for not less than 10 years nor more than 20 years.

### A.       Lascivious Exhibition of the Genitals or Pubic Area

"Virtually all lower courts that have addressed the meaning of 'lascivious exhibition' have embraced the widely followed 'Dost' test, originally developed by a California district court and affirmed in an opinion by the Ninth Circuit." *Williams*, 444 F.3d at 1299 n. 62 (citing *U.S. v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), *aff'd, U.S. v. Wiegant*, 812 F.2d 1239 (9th Cir. 1987)). These factors are:

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

> 2) whether the setting of the visual depiction is sexually suggestive, i.e. in a place or pose generally associated with sexual activity;

> 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

> 4) whether the child is fully or partially clothed, or nude;

> 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

> 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*U.S. v. Steen*, 634 F.3d 822, 826 (5th Cir. 2011)(citing *Dost*, 636 F. Supp. at 832).  These factors are "neither definitive nor exhaustive."  *U.S. v. Horn*, 187 F.3d 781, 789 (8th Cir. 1999), *cert. denied*, 529 U.S. 1029, 120 S. Ct. 1442, 146 L. Ed. 2d 330 (2000).

Recent cases have considered the application of the *Dost* factors to facts similar to the present case, where a Defendant is charged with secretly recording minors engaged in "sexually explicit conduct," specifically the "lascivious exhibition of the genitals or pubic area."  In *U.S. v. Steen*, the defendant secretly recorded several individuals undressing in a tanning salon.  The Fifth Circuit reversed the conviction of the defendant following a jury trial for the production of child

pornography under Section 2251(a) because there was insufficient evidence that the defendant obtained images of the lascivious exhibition of the minor's genitals or pubic area. 634 F.3d at 828. Specifically, the Fifth Circuit found that: 1) the focal point of the visual depiction was not on the child's pubic area because it was a brief view of the pubic area for 1.5 seconds; 2) the setting was not sexually suggestive, as it was a tanning salon; 3) the pose of the child was not unnatural because she was being filmed secretly and acting naturally; 4) the child neither acted coy nor displayed a willingness to engage in sexual activity, making the fourth factor irrelevant; and 5) there was insufficient evidence that the image was meant to elicit a sexual response in the viewer, as opposed to merely exciting the viewer as a voyeur. *Id*. at 827-28. Furthermore, the Fifth Circuit emphasized that the secret recording of the minor by the defendant, who also secretly recorded adults, appeared to be no more than voyeurism. *Id*. at 824, 828. The Fifth Circuit noted that: 1) the defendant's computer only had adult pornographic images; 2) there was no evidence that the tanning salon video footage was uploaded; and 3) the defendant had not distributed the images. *Id*. at 825.

To contrast, in *U.S. v. Johnson*, the defendant, a wrestling coach, secretly recorded minors undressing and weighing themselves nude at his direction. The Eighth Circuit reversed the district court's grant of a motion for judgment of acquittal following a jury conviction of the defendant for attempting to violate 18 U.S.C. §2251. 2011 WL 1236442, at *8. In reversing the lower court, the Eighth Circuit emphasized that the prosecution charged the defendant under an attempt theory. *Id*. at *4-5. The Court noted that three of the factors, sexually suggestive setting, inappropriate attire or unnatural poses, and sexual coyness, were irrelevant based on the facts. *Id*. at *6. However, the Court considered: 1) the focal point of the visual images was on the minors' genital area because the defendant adjusted the recording and zoomed in on the area where the females' genitals would be

if they faced the camera; 2) the females were totally nude, and their facial features were of little or no importance; 3) the image was recorded to elicit a sexual response in the viewer, especially in light of the defendant's admission that he recorded the minors because he wanted to see what they looked like naked and that his "pervertedness" got the best of him. *Id*. at *5-6.

### B.      Application of the *Dost* Factors

The parties do not contest the fourth factor, the minor's nudity.  As stipulated, the minor was captured completely nude in the two videos.  However, mere nudity does not constitute the lascivious exhibition of the genitals or pubic area. *See U.S. v. Kemmerling*, 285 F.3d 644, 645-46 (8th Cir.), *cert. denied*, 537 U.S. 860, 123 S. Ct. 237, 154 L. Ed. 2d 99 (2002); *Johnson*, 2011 WL 1236442, at *4; *U.S. v. Soderstrand*, 412 F.3d 1146, 1151-52 (10th Cir. 2005); *U.S. v. Amirault*, 173 F.3d 28, 35 (3d Cir. 1999).

Additionally, it is undisputed that the minor was not exhibiting sexual coyness or a willingness to engage in sexual activity because she did not know she was being recorded. *See Steen*, 634 F.3d at 827; *U.S. v. Helton*, No. CR-07-70-T, 2007 WL 1674196, at *7 (W.D. Okla. June 7, 2007), *aff'd*, 302 Fed. Appx. 842 (8th Cir. Dec. 15, 2008).  Therefore, the Court focuses on the remaining four *Dost* factors.

### 1.      Focal Point

When considering whether the visual depiction focused on the minor's genitals or pubic area with secret recordings, courts consider the position of the camera used to capture the images.  In certain instances, using the zoom feature to focus on the minor's genital area and capturing images where the face appears to be of little or no importance is sufficient evidence for the court to determine that the focal point was the minor's genital or pubic area. *Johnson*, 2011 WL 1236442,

at *6 ("A reasonable juror could find from the evidence that Johnson adjusted the zoom feature in an attempt to tighten the focus of the camera on the area where the females' genitals would be if they were to face the camera, and thereby determine that the first *Dost* factor was satisfied."); *Tilton v. Playboy Entertainment Group, et al.*, No. 8:05-cv-692-T-30TGW, at *2 (M.D. Fla. July 30, 2007)("These photographs and/or freeze-frame images focus on the Plaintiff's pubic area, which is fully covered by her bathing suit.  Her legs are spread apart and she is lying on a stage."); *Helton*, 2007 WL 1674196, at *7 ("[The] defendant's placement of the camcorder immediately opposite the toilet seat at a level and angle insuring that the resulting video would be aimed at the pubic and genital areas of anyone sitting on the toilet . . . .").  However, in other instances where the image of the minor's pubic area happens to be captured, as opposed to being the focal point, courts hold that there is not sufficient evidence of the first *Dost* factor.  *Steen*, 634 F.3d at 827 ("[The minor's] pubic region is only visible for about 1.5 seconds.  Moreover, the film did not accent the pubic area–to the contrary, the brief seconds the pubic region is visible, it is on the far side of the image's frame."); *Amirault*, 173 F.3d at 33 ("Although the girl's pubic area is on clear display, there is no close-up view of the groin, and the genitals are not featured in the center of the composition."); *Tilton v. Deslin Hotels, Inc., et al.*, No. 8:05-cv-692-T-30TGW, 2007 WL 2492464, at *2 n. 6 (M.D. Fla. Aug. 30, 2007)("None of the video clips filed from the Promotional video were focused or framed on any persons' genital area.").[4]

Upon review of the video recordings, both on a computer monitor and on Defendant's cellular telephone, the Court finds that the focal point of the recordings is not on the minor's genitals

---

[4]  Furthermore, simply exposing one's breasts on video does not constitute a lascivious exhibition of the genitals.  *Tilton*, 2007 WL 2492464, at *2 n. 7.

or pubic area.  First, the pubic area of the minor was only a small fraction of the video recordings.

In the first video, which lasts over 8 minutes, the minor's pubic area is visible for approximately 9

seconds.  In the second video, which lasts over 6 minutes, the minor's pubic area is visible for 14

seconds.  Second, there was no close-up, zoom, or highlight of the minor's pubic area in either video

recording.  The minor is depicted  completely nude on the videos.  The video recordings were made

on a cell phone which was left  unattended and recording in the bathroom.  The phone was

positioned on the floor in a pile of clothing to capture and record the area of the bathroom directly

in front of the glass shower as well as the shower area.  Therefore, the focal point of the video

recordings is not on the minor's pubic area.[5]

### 2.        Sexually Suggestive Setting

Courts have differing views on whether a bathroom and/or shower is a sexually suggestive

setting.  *See U.S. v. Larkin*, 629 F.3d 177, 183 (3d Cir. 2010)("Standing alone, the setting is not

commonly associated with sexual activity.  But showers and bathtubs are frequent hosts to fantasy

sexual encounters as portrayed on television and in film.  It is potentially as much of a setting for

fantasy sexual activity as is an adult's bedroom."); *U.S. v. Clark*, Crim. A. No. 09-33 GMS, 2010

WL 3488138, at *6 (D. Del. Aug. 30, 2010)("[A] bathroom is not necessarily sexually suggestive.

However . . . the bathroom is perhaps the most common room in which a person exposes his or her

genitals and pubic area."); *Helton*, 2007 WL 1674196, at *7 ("[T]he government conceded that a

---

[5]  The Court notes the Government's reliance on *U.S. v. Gool*, No. CR 06-0544-JAJ, 2008 WL 1735655, at *3 (S.D. Iowa Apr. 11, 2008), to support the assertion that videotaping a minor disrobing, entering, and exiting the shower is focusing on the pubic area.  However, the defendant in that case pled guilty to sexual exploitation of children and possession of child pornography.  The trial court only issued an opinion setting forth reasons for the sentence and did not do an analysis of the evidence under the *Dost* test.

bathroom is not necessarily a sexually suggestive location."). For such a setting to be sexually suggestive, there should be sufficient evidence of the other *Dost* factors, such as unnatural posing or a focus on the pubic area. *See Larkin*, 629 F.3d at 183 ("[The minor] does not appear to be in the act of bathing, there is no water in the bathtub, and she does not appear to be wet."); *compare Doe v. Chamberlin*, 299 F.3d 192,196 (3d Cir. 2002)("[A]part from the girls in the shower being unclothed, no reasonable juror could find a *Dost* factor present . . . An open shower near a beach was not a place associated with sexual activity."); *Helton*, 2007 WL 1674196, at *7 (finding that the bathroom was sexually suggestive because the defendant focused the camera on the minors' genitals and pubic area).

The question as to whether the bathroom and shower area where the minor was recorded is a sexually suggestive setting is a close question. The recording does not focus on the minor's genitals or pubic area, and she was acting naturally when disrobing, showering and covering herself upon exiting the shower, which is noted later in the Order. Based on the evidence presented, the Court finds that the bathroom and shower setting is not sexually suggestive.

### 3.      Inappropriate Attire/Unnatural Pose

It is natural for one to be nude when showering. *See Doe*, 299 F.3d at 196 ("It was natural to be nude when washing off from the sand."). Furthermore, if the minor is being secretly recorded, she does not know that she is being filmed and thus, is not in an unnatural pose. *See Steen*, 634 F.3d at 827 ("Because she did not know she was being filmed, she is, of course, acting naturally."). Therefore, the Court finds that the minor was not inappropriately dressed for her age or in an unnatural pose in the video recordings.

### 4.      Designed to Elicit a Sexual Response

"The sixth factor is the most difficult to apply–whether the visual depiction is intended or designed to elicit a sexual response in the viewer."  *Steen*, 634 F.3d at 827-28; *see Amirault*, 173 F.3d at 34 ("This is the most confusing and contentious of the *Dost* factors."). In considering this factor, the inquiries are: "Is this a subjective or objective standard, and should we be evaluating the response of an average viewer or the specific defendant in this case?  Moreover, is the intent to elicit a sexual response analyzed from the perspective of the [visual depiction's] composition, or from extrinsic evidence (such as where the [visual depiction] was obtained, who the photographer [or recorder] was, etc.)?"  *Amirault*, 173 F.3d at 34 (alterations added).[6]  The Eleventh Circuit has not determined whether the sixth factor of the *Dost* test should be analyzed using an objective or subjective standard.  As guidance, the Court considers determinations from other jurisdictions.

Some courts have found that an objective standard is used to determine whether the visual depiction was made to elicit a sexual response.[7]  Other courts have used a subjective standard and

---

[6]  *See also U.S. v. Frabizio*, 459 F.3d 80, 89-90 (1st Cir. 2006)(noting the confusion on whether an objective or subjective standard is used when considering whether the image is lascivious).

[7]  *See Johnson*, 2011 WL 1236442, at *6 ("A reasonable jury could draw a reasonable inference that Johnson intended the videos to be sexual in nature and to elicit a sexual response in the viewer . . . The jury was carefully instructed that it was not to decide 'whether the pictures appealed, or were intended to appeal, to the defendant's sexual interests, only whether they appear to be of a sexual character.'"); *Amirault*, 173 F.3d at 35 ("[T]he focus should be on the objective criteria of the photograph's design."); *U.S. v. Villiard*, 885 F.2d 117, 125 (3d Cir. 1989)("If we were to conclude that the photographs were lascivious merely because Villiard found them sexually arousing, we would be engaging in conclusory bootstrapping rather than the task at hand-a legal analysis of the sufficiency of the evidence of lasciviousness."); *Gool*, 2008 WL 1735655, at *3 ("It is obvious that the selection of these scenes made the video objectively sexual in nature."); *Helton*, 2007 WL 1674196, at *8 (citing *Villiard*, 885 F.2d at 125 and noting that the court must focus on the intended effect on the viewer as opposed to the actual effect on the viewer).

focused on whether the visual depiction of the minor was meant to elicit a sexual response in the defendant and likeminded viewers.[8]  Still other courts have used a hybrid standard[9] or considered a "minor as a sexual object" factor.[10]

_____Here, the Court does not determine whether an objective, subjective or hybrid standard should be used in considering the sixth *Dost* factor.  There is insufficient evidence that the videos

---

[8]  *See U.S. v. Overton*, 573 F.3d 679, 689 (9th Cir. 2009)("The homemade images of [the minor] were intended and designed to elicit a sexual response in the voyeur-namely, in Overton himself or likeminded individuals."); *U.S. v. Rivera*, 546 F.3d 245, 250 (2d Cir. 2008)("A reasonable jury could therefore find that Rivera composed the images in order to elicit a sexual response in a viewer-himself."); *Larkin*, 629 F.3d at 184 ("Larkin trafficked this photograph over the internet to an interested pedophile, whom she acknowledged 'would find them sexually stimulating because of his predilection for young children' . . . [therefore] Larkin designed the image depicted in this photograph to arouse."); *U.S. v. Knox*, 32 F.3d 733, 747 (3d Cir. 1994)("Although none of these factors is alone dispositive, the totality of these factors lead us to conclude that the minor subjects were engaged in conduct-namely, the exhibition of their genitals or pubic area-which would appeal to the lascivious interest of an audience of pedophiles."); *Weigand*, 812 F.2d 1239, 1244 (9th Cir. 1987)("[L]asciviousness is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself and likeminded pedophiles . . . . to arouse or satisfy the sexual cravings of a voyeur."); *Tilton*, 2007 WL 2208903, at *2 ("Furthermore, taken in conjunction with the www.bikinivoyeur.com website advertisements, the images seem to elicit a sexual response from subscribers (or potential subscribers) to the website."); *U.S. v. Cullipher*, No. 2:07CR00001, 2007 WL 1830711 (W.D. Va. June 25, 2007)("His intent was to satisfy his own obsessions without any commercial or financial motivation.").

[9]  Specifically, the Sixth Circuit considers: 1) where, when and under what circumstances the photographs were taken; 2) the presence of other images of the same victim(s) taken at or around the same time; and 3) any statements a defendant made about the images.  *U.S. v. Brown*, 579 F.3d 672, 683-84 (6th Cir. 2009).

[10]  *See Johnson*, 2011 WL 1236442, at *5 (noting that the jury could consider an "additional factor of whether the picture portrays the minor as a sexual object.")(quotation omitted); *Brown*, 579 F.3d at 683 ("In light of these competing concerns, we find that it is appropriate to apply a 'limited context' test that permits consideration of the context in which the images were taken, but limits the consideration of the contextual evidence to the circumstances directly related to the taking of the images."); *U.S. v. Wallenfang*, 568 F.3d 649, 659-660 (8th Cir. 2009)("[B]y uploading the pictures of the child to the newsgroup, a jury could reasonably find that Wallenfang portrayed the child as a sexual object for viewers.").

were meant to elicit a sexual response in the viewer.   Unlike the facts in *U.S. v. Johnson*, the Defendant here made no admissions about the images.   Instead, in considering the totality of the evidence presented, the Court  finds that the images obtained by Defendant's secret recording of the minor constitute voyeurism and not child pornography.  First, the videos could not be considered to have been intended to elicit a sexual response in a viewer any more than mere nudity would, which is insufficient alone to find that an image depicts the lascivious exhibition of the genitals.  Second, the Court notes that the ordinary meaning of "lascivious exhibition" is the "depiction which displays or brings forth to view in order to attract notice to the genitals or pubic area of children, in order to excite lustfulness or sexual stimulation in the viewer." *Steen*, 634 F.3d at 828.  As previously noted, the pubic area of the minor is not the focal point of the video recordings.  Third, Defendant's conduct of secretly recording the minor is undisputably voyeurism.  Under 18 U.S.C. §1801(a), anyone who has the intent to capture an image of a private area of an individual without their consent and knowingly does so under circumstances in which the individual has a reasonable expectation of privacy commits video voyeurism.[11]  Fourth, there is no evidence tending to support a finding that Defendant is sexually excited by viewing minors as opposed to being merely excited by engaging in voyeurism. Based on these determinations, the Court finds that the Government did not present sufficient evidence to support a finding that Defendant's video recordings included a minor engaging

---

[11]   Under this statute, the term "private area of the individual means the naked or undergarment clad genitals, pubic area, buttocks, or female breast of the individual.  *Id.* at §1801(b)(3).  Additionally, under the circumstances in which that individual has a reasonable expectation of privacy means: "(A) circumstances in which a reasonable person would believe that he or she could disrobe in privacy, without being concerned that an image of a private area of the individual was being captured; or (B) circumstances in which a reasonable person would believe that a private area of the individual would not be visible to the public, regardless of whether that person is in a public or private area." *Id.* at §1801(b)(5).

in sexually explicit conduct, specifically the lascivious exhibition of the minor's genitals or pubic area.

## V.       CONCLUSION AND JUDGMENT

_____It is undisputed that Defendant engaged in voyeurism when he recorded the minor while she was in the bathroom, undressing, and showering. Although Defendant's conduct is reprehensible, unacceptable and must not be condoned, the images that he recorded on his cellular telephone do not constitute child pornography under 18 U.S.C. §2252(a)(4)(B).  Accordingly, the Court finds that the Government has not satisfied its burden of proof beyond a reasonable doubt and the  Defendant is not  guilty of the crime charged in the Indictment, 18 U.S.C. § 2252(a)(4)(B).  The Defendant may go hence without day.

**DONE AND ORDERED** at Ft. Myers, Florida, on June 15, 2011.

Charlene Edwards Honeywell
Charlene Edwards Honeywell
United States District Judge

COPIES TO:
COUNSEL OF RECORD_____